A05A1207. HYDOCK v. THE STATE.
(619 SE2d 807)

MIKELL, Judge.

After a jury trial, Jeff Hydock was convicted of theft by taking and sentenced to five years probation. On appeal, Hydock raises the single enumeration of error that the trial court erred when it denied his motion for a directed verdict of acquittal, arguing the insufficiency of the evidence. Because we agree that the evidence was insufficient, we reverse.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence. We do not

---

[19] 166 Ga. App. 9 (303 SE2d 134) (1983).
[20] 126 Ga. 484 (54 SE 1022) (1906).
[21] *Wilson*, supra, 166 Ga. App. at 14 (3).
[22] Id.

weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt. This test applies when the sufficiency of the evidence is challenged, whether the challenge arises from the denial of a motion for directed verdict or the denial of a motion for new trial.[1]

So viewed, the evidence shows that John Houser, the victim in this case, contacted Southern Style Fence Company ("Southern Fence") and asked that a representative visit his home to price the installation of a fence. Southern Fence was owned by Gregg Hancock. Houser testified that on or about April 13, 2001, Hydock arrived at his home and introduced himself to Houser as a partner of Southern Fence. After Hydock measured the property, Houser entered into a contract with Southern Fence, whereby he agreed to pay $10,000 to have the fence erected.

Pursuant to the contract, Houser was required to pay $5,000 initially, $3,000 upon the job's completion, and the remaining $2,000 within 30 days. Houser testified that he gave Hydock a $5,000 check for materials, which was made payable to Southern Fence. The check was cashed, but no materials were ever delivered to his home. Southern Fence set eight posts and dug sixty-three holes but never returned to complete the job. The trial court also admitted evidence that in March 2001, Deborah Painter had a similar experience with Southern Fence. Ms. Painter testified that Hydock represented himself as a partner of Southern Fence; that she entered a contract to have a fence erected for $1,240; that he told her to make the initial deposit of $620 payable to Gregg Hancock; and that no work was ever completed.

Hydock testified that he was not a full-time employee of Southern Fence, but that Hancock, the owner, would call him periodically and ask him to bid a fence job for him, for which he would pay Hydock $100. Hydock never received the $100 payment after obtaining the Houser contract. Hydock stated that he knew Hancock from high school but maintained that he was not an owner, principal or officer of Southern Fence. Hydock further testified that after he met with Houser, he met Hancock at a Dairy Queen in McDonough and gave him the check. The check was made payable to Southern Style Fence Company, and Hancock endorsed the back of it. Houser and Hydock testified that they could not locate Hancock.

---

[1] (Punctuation and footnotes omitted.) *Dawson v. State*, 271 Ga. App. 217 (1) (609 SE2d 158) (2005).

Pursuant to OCGA § 16-8-2, "[a] person commits the offense of theft by taking when he unlawfully takes or, being in lawful possession thereof, unlawfully appropriates any property of another with the intention of depriving him of the property, regardless of the manner in which the property is taken or appropriated." In *Myrick v. State*,[2] in which the defendant was charged with theft by conversion, the indictment read: "having lawfully obtained funds of [the victims] in excess of $500, 'under an agreement to make a specified application of said funds, to wit: real property improvements, [the defendant] did knowingly convert said funds to his own use in violation of such agreement by failing to perform said real property improvements.' "[3] We reversed the defendant's conviction because "the State did not prove appellant obtained the $4,000 'under an agreement . . . to make a specified application of such funds,' and that he 'knowingly converted' the money to himself."[4]

In this case, the indictment read as follows: "Hydock . . . did having unlawfully obtained funds . . . under an agreement, to wit: a contract made between the two parties, to make a specified application of said funds, . . . did knowingly convert said funds to his own use in violation of such agreement, by cashing the check and not building the fence." "[T]he state was obliged to prove its case under the conversion theory set out in the indictment."[5] As in *Myrick*,[6] there was no evidence presented that Hydock converted the funds for his own use or cashed the check. Instead, the evidence showed that the check was endorsed and cashed by Hancock. "[T]heft by taking requires the actual appropriation of goods."[7] Additionally, "[t]o warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused."[8] The state did not exclude every other reasonable hypothesis. Therefore, we must reverse Hydock's conviction as we find that it is unsupportable as a matter of law.[9]

---

[2] 210 Ga. App. 393 (436 SE2d 100) (1993).

[3] Id.

[4] (Citation and punctuation omitted.) Id.

[5] (Citations omitted.) *Cutter v. State*, 168 Ga. App. 651 (310 SE2d 16) (1983) (indictment alleged theft by taking by conversion).

[6] Supra.

[7] *Hawkins v. State*, 219 Ga. App. 484, 486 (2) (465 SE2d 527) (1995).

[8] (Punctuation omitted.) *Haney v. State*, 261 Ga. App. 136, 138 (1) (581 SE2d 626) (2003), quoting OCGA § 24-4-6.

[9] See *Underwood v. State*, 221 Ga. App. 93, 94 (1) (470 SE2d 699) (1996) ("[q]uestions of reasonableness are generally decided by the jury, and this court will not disturb the jury's finding that the evidence was sufficient to exclude every reasonable hypothesis save that of guilt unless the verdict is unsupportable as a matter of law").

*Judgment reversed. Andrews, P. J., and Phipps, J., concur.*

DECIDED AUGUST 15, 2005.

*Sexton & Morris, Ricky W. Morris, Jr., Joseph S. Key*, for appellant.

*William T. McBroom, District Attorney, Cindy L. Spindler, Assistant District Attorney*, for appellee.