## A91A0266. RAJAPPA v. THE STATE.
(408 SE2d 163)

ANDREWS, Judge.

Padmini Rajappa was convicted in a bench trial of the misdemeanor offense of giving a false name to a police officer in violation of OCGA § 16-10-25, which she appeals.

1. We first address appellant's enumeration concerning the general grounds. At trial, police officer Dodson testified that on June 18, 1990, she responded to a 911 call from a man who had mailed a $1,300 check to a DeKalb County address in payment for an airline ticket he ordered from the "Padmini International" travel agency, but had not received the ticket. Officer Dodson went to the address given by the caller, which proved to be an apartment on Buford Highway. When a teenage girl answered the door, Officer Dodson asked to see Padmini Rajappa. Officer Dodson testified that the girl, Shnan Balakri, responded that Rajappa, her mother, was in Florida and would return the next day.

Officer Scott Biumi arrived to assist Officer Dodson, and they asked for, and obtained, Balakri's consent to enter the apartment to make certain that the mother was not present. The officers observed six or eight adults sitting in the living room and found Rajappa in the apartment bathroom. Officer Dodson testified that in response to her query, Rajappa stated her name was "Mini Vankat." Dodson testified that she wrote the name in the palm of her hand after Rajappa spelled it for her. Balakri asserted that Rajappa was her aunt.

When first asked for identification, Rajappa told the police that she had just arrived from out of town and had none. Upon continued questioning she acknowledged that her name was Padmini Rajappa, produced a Georgia driver's license under that name, and admitted that Balakri was her daughter. Officer Biumi testified that he understood Rajappa to say that her name was "Nini Vankat," although he acknowledged that she could have said "Mini," and that she appeared nervous and was a little difficult to understand.

At the trial, Rajappa testified that her given name is "Padmini," and explained that in India women are given only first names and use the first names of either their fathers or their husbands as their last names. She testified that since she is divorced, she uses her father's first name, "Venkateswara Rajappa," as a last name, and that she uses "Mini" as a nickname. Rajappa stated that she and her daughter understood the officers to be asking for "the Padmini Travel owner" rather than for "Padmini Rajappa," and that was why Balakri answered that the owner was in Florida because appellant's mother, who lives in Florida, owns the business. Rajappa testified that she told the officers that her name was "Padmini Venkateswara," but that when they had difficulty understanding her she explained that people often

called her "Mini," which is the name she observed Officer Dodson write in her hand. Rajappa stated that she also spelled for the officers the second name of "Venkat," a shortened version of the name she uses as her last name, and which she testified had the same meaning as the full name of "Venkateswara." Rajappa stated that she had returned from India the prior day, and that she delayed giving her identification to the officers only because she had to search for her handbag. She also testified that after she learned of the travel customer's complaint, he was issued a ticket the next day.

2. There was sufficient evidence here for the Court to find Rajappa guilty of giving a false name to a police officer under OCGA § 16-10-25 beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). First, Rajappa's trial testimony revealed that she was working on a doctorate thesis at Vanderbilt in English, had received an E.D.S. degree from Middle Tennessee State University, and held two undergraduate degrees from Indian colleges. Her educational background indicated that she was familiar with the customs of the United States.

Additionally, Rajappa's behavior when the police arrived at her home supported the finding of guilt. The investigating officers testified that when they arrived at her house, Rajappa was hiding in the bathroom. When the police found her, she represented herself as her daughter's aunt and identified herself as "Mini Venkateswara." When asked to produce identification, Rajappa denied that she had identification, which later proved to be untrue. She later showed the police a driver's license bearing the name "Padmini Rajappa" and admitted that was her name.

Although Rajappa had an explanation for giving a different name to the police, the explanation was problematic. When the Court asked her to write out the name "Venkateswara," she misspelled the name and did not notice that she had misspelled it until this fact was brought to her attention. Furthermore, she stated that the police did not ask specifically for her; she claimed that "[t]hey did not say Padmini Rajappa, my name." The question of whether Rajappa can be guilty of giving a false name when by Indian custom she has both last names has not been specifically addressed in Georgia, although a similar situation arose in *Johnson v. State*, 149 Ga. App. 273 (253 SE2d 889) (1979). In that case, this court held that there was sufficient evidence to sustain the jury's verdict of guilty of giving a false name, since the name which the defendant gave the police officers was not the name on his birth certificate, social security card, or driver's license. The same result is dictated here.

OCGA § 16-10-25 states that a "person who gives a false name or address to a law enforcement officer in the lawful discharge of his official duties with the intent of misleading the officer as to his identify

. . ." is guilty of the offense. The statute's requirement of an "intent to deceive" is the element critical to Rajappa's guilt here. (See *Douglas v. State*, 194 Ga. App. 182 (390 SE2d 98) (1990), in which the fact that the defendant admitted that he lied to the officer about his name was sufficient evidence to sustain his conviction.) Regardless of whether Indian custom recognized the name "Venkateswara" as Padmini's last name, there was ample evidence from which the Court could have concluded that she meant to deceive the police by giving that name.

3. In a separate enumeration of error, Padmini contends that the trial court erred in convicting her since the police officers were acting unlawfully in the discharge of their duties in that they had no warrant for the search and the consent of her minor daughter to search the apartment was invalid.

The law concerning the authority of a third person, who is a minor, to consent to a warrantless search establishes that this determination is made on a case by case basis. *Atkins v. State*, 173 Ga. App. 9 (325 SE2d 388) (1984), aff'd and remanded, 254 Ga. 641 (331 SE2d 597) (1985). "In cases where the person consenting to the search has not attained the age of eighteen, the courts have measured the minor's control over the area searched by examining whether the minor lived on the premises, whether the minor had a right of access to the premises and the right to invite others thereto; whether the minor was of an age at which he or she could be expected to exercise at least minimal discretion; and whether officers acted reasonably in believing that the minor had sufficient control over the premises to give a valid consent to search." *Atkins*, supra, 173 Ga. App. 9, 11. Indeed, "an analysis of these factors will indicate the minor's relationship to the premises or effect sought to be inspected, which is the fundamental consideration in any third party consent search." *Atkins*, supra, 254 Ga. 642.

In this case, we find that Rajappa's daughter's consent was sufficient to authorize the entry into the apartment. Balakri lived on the premises and at age 15, was at an age at which she could be expected to exercise at least minimal discretion. Although her mother denied at trial that Balakri exercised equal control over the premises, the fact that Balakri indicated to the police that her mother was out of town and that she was in charge of the apartment indicated that she exerted the necessary control over the apartment. Balakri's control over the apartment could also be inferred from the fact that the adults in the apartment, who the police could see from the door, allowed Balakri to conduct the police interview and made no effort to assist her.

The police officers acted reasonably in assuming that Balakri had sufficient control over the premises to give them authority to search.

Therefore, the police officer's presence in Rajappa's apartment was not unlawful and the trial court did not err in so ruling.

*Judgment affirmed. Carley, Pope, Beasley and Cooper, JJ., concur. Sognier, C. J., McMurray, P. J., Banke, P. J., and Birdsong, P. J., dissent.*

SOGNIER, Chief Judge, dissenting.

I respectfully dissent.

I agree with appellant that the evidence adduced at trial was not sufficient to establish a violation of OCGA § 16-10-25 beyond a reasonable doubt so as to satisfy the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). The accusation issued in this case charged appellant with violating OCGA § 16-10-25 by giving the officers the name of "Nini Vankat." I find the State did not establish the essential element of falsely stating the name of *"Nini* Vankat" because Officer Dodson testified that appellant said her name was *"Mini* Vankat," and Officer Biumi testified that appellant could have said either "Nini" or "Mini" Vankat. Accord *Preston v. State*, 257 Ga. 42, 44 (1) (354 SE2d 135) (1987). Further, given the officers' admitted difficulty in understanding appellant's statements; their acknowledged inability to speak or read appellant's native language; appellant's unchallenged testimony concerning the difference in customs between "first" and "last" names in the United States and India; and considering the obvious similarity between appellant's nickname and what she gave as the shortened version of her last name (which she testified had the same meaning in her language as the full name) and the name Officer Dodson testified appellant gave them, I cannot conclude that any rational trier of fact could have found the essential element of intent to deceive beyond a reasonable doubt. *Jackson*, supra at 319; see generally *Teston v. State*, 194 Ga. App. 324 (390 SE2d 437) (1990). I disagree with the majority's reliance on *Douglas v. State*, 194 Ga. App. 182 (390 SE2d 98) (1990) on the issue of intent to deceive because in that case the defendant subsequently admitted giving a false name to the arresting officers, whereas here appellant insisted the name she gave was correct and gave a logical explanation to support her claim. *Johnson v. State*, 149 Ga. App. 273 (253 SE2d 889) (1979) is similarly distinguishable because unlike appellant in the case sub judice, the defendant in *Johnson* gave police a name that was not remotely similar to the name on his identification, and he made no explanation for the discrepancy.

For these reasons, I would reverse the judgment of the trial court.

I am authorized to state that Presiding Judge McMurray, Presiding Judge Banke, and Presiding Judge Birdsong join in this dissent.

376

DECIDED JULY 9, 1991.

*Robert H. McDonnell*, for appellant.
*Ralph T. Bowden, Jr., Solicitor, Gary D. Bergman, Cliff Howard,
Assistant Solicitors*, for appellee.